## THE PARAISO.

(District Court, W. D. Washington, N. D. September 9, 1915.)

### No. 3999.

SHIPPING ☞209—PROCEEDINGS FOR LIMITATION OF LIABILITY—STIPULATION.
　　Where the owner and charterer of a vessel join in a petition for limitation of liability for a collision, the fact that the charterer manned, victualed, and navigated the vessel on the voyage, and was thus owner pro hac vice, does not require him to join in a stipulation for any more than the value of his own interest in the vessel as charterer; the stipulation for her value being required from the general owner only.

　　[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. ☞209.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Petition by the Long Beach Steamship Company, owner of the steamship Paraiso, and the Pacific Coast Steamship Company, charterer of said vessel, for limitation of liability. On settlement of stipulations for release of vessel.

Farrell, Kane & Stratton, of Seattle, Wash., for charterer.

Ira A. Campbell, of San Francisco, Cal., and Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., for owner.

Jones & Riddell, of Seattle, Wash., and Grosscup & Morrow, of Tacoma, Wash., for libeling claimants.

Winter S. Martin, Asst. U. S. Atty., of Seattle, Wash., for the United States.

NETERER, District Judge. The Long Beach Steamship Company, as owner, and the Pacific Coast Steamship Company, as charterer, of the steamship Paraiso, filed a petition for limitation of liability, under sections 4283 and 4286, Rev. Stat. (Comp. St. 1913, §§ 8021, 8024), and allege that on the morning of August 29, 1915, the steamship collided with the steamship Admiral Watson, and that because thereof the Admiral Watson, sank in 30 feet of water, and that a libel has been filed against the Paraiso by the owners and charterers of the Admiral Watson, claiming damage in the sum of $247,000; that other intervening libels have been filed; that the interest of the owner in the Paraiso is worth $172,000, and of the charterer by reason of the charter is $500, and $1,294.84 for pending freight—said petition containing the usual allegations, with the further allegations that each petitioner desires to contest all liability for any loss or damages and prays an appraisement of their respective interests in said vessel, to the end that stipulations with approved sureties for the payment of such appraisement of its interest in said vessel and freight pending when such payment shall be directed by the court. On hearing in open court pursuant to notice it was agreed by the parties that the value of the interest of the owner in said steamship Paraiso is $180,000, and of the charterer in the vessel and pending freight $5,000, and that certain oil tanks placed on the vessel by the charterer for carrying oil for commercial purposes were of the value of $1,000; but it was denied that such tanks were fixtures on said vessel, and that it has been the intention to remove them, and that they were being unfastened at the time of the collision.

I think that the tanks at the time of the collision were fixtures on said vessel, as between the charterer and libelants and other claimants, and that the interest of the charterer in said vessel was therefore $6,000. Testimony was offered which fully sustained the stipulation of the parties. Petitioners each offer to execute the usual bond in such case, for $180,000 and $6,000, respectively, for the release of the vessel. It is conceded that a bond should be accepted, but it is contended by the claimants that, since the charterer manned, victualed, and navigated the vessel, it was pro hac vice owner, and that the stipulation should be given by the charterer as principal, and that the owner, so far as this proceeding is concerned, was a stranger and not competent, except as joint maker with the charterer or surety. It is strongly

urged that by the provisions of section 4286 the charterer is considered owner of the vessel, and that the Supreme Court, in Thorp v. Hammond, 12 Wall. 408, 20 L. Ed. 419, held that section 5 of the act of March 3, 1851 (9 Stat. 636, c. 43), which is brought forward as section 4286, R. S., made the charterer owner and the only principal competent to act. It will be noted by the provisions of section 4283 that:

"The liability of the owner of any vessel * * * for any loss, damage, for injury by collision, * * * done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

And by section 4286:

"The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, * * * shall be deemed the owner of such vessel within the meaning of the provisions of this title relating to the limitation of the liability· of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof."

The offending thing or wrongdoer is the ship (The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969), and the ship, by whomsoever navigated, is liable for damages (Workman v. New York City, Mayor, etc., 179 U. S. 573, 21 Sup. Ct. 212, 45 L. Ed. 314), and the vessel which makes the aggression is considered the offender (The Barnstable, 181 U. S. 464, 21 Sup. Ct. 684, 45 L. Ed. 954). No greater liability under these sections, however, can attach than the interest of the vessel; if the collision was occasioned without the privity or knowledge of the owner or owners, and liability can be limited, then the only liability will be the several interests in the vessel. The vessel is liable in any event, irrespective of the charter party, and the loss of the charterer would be the interest in the vessel and pending freight, or $6,000, and the loss of the owner, the value of the ship, which is $180,000. If the court required the charterer to make the stipulation for $186,000, the full value of the vessel and pending freight, it would require the charterer to assume a liability of $180,000, for which, under these sections, it cannot be holden, and to compel the owner to make a joint bond would be to require it to assume $6,000 more than the value of the vessel, the limit of its liability.

The claimants ground their contention on Thorp v. Hammond, supra, decided in December, 1870, in which the court held that the part owner of a vessel operating a vessel on shares, himself manning, victualing, and navigating it, although there was no formal charter party, was a charterer, and liable in personam for damages occasioned by a collision, and the court (12 Wall. at page 416, 20 L. Ed. 419) used this language:

"He sailed the vessel on shares, hiring his own crew, paying and victualing them, paying half the port charges, retaining half the net freight after the port charges were taken out, and paying to the general owners the other half. It is clear, therefore, that he must be considered ·as having been the owner 'pro hac vice.' This accords with the authorities generally. Notwithstanding this, however, and though Hammond was the special owner, it has

been contended on behalf of the libelants that all the general owners are liable for the torts committed by the schooner while she was thus let to charter. The Circuit Court was of opinion that they are not, and this court is equally divided upon the question. But we are all of opinion that the owner pro hac vice is liable, and that he may be charged in this proceeding. The court below held that he had been sued merely as a part owner, not as the charterer, wrongdoer, or active cause of the disaster, and that, as his liability was placed by the libel on the same ground as that of other owners, the suit must stand or fall as to all the respondents, and they held the act of March 3, 1851, a bar to the suit in the form in which it had been brought. The court, therefore, dismissed the libel. This, we think, was an error. The act of March 3, 1851, enacts, by its fifth section, that the charterer or charterers of any ship or vessel, in case he or they shall man, victual, and navigate such vessel at his or their own expense, or by his or their own procurement, shall be deemed the owner or owners of such vessel within the meaning of the act. The previous section had declared what shall be the liability of owners for collisions. Hammond, therefore, is to be regarded as the owner, because the charterer, and as such responsible for the tortious acts of the vessel. If the other general owners are not, he is. * * * Had Hammond been sued alone, as he might have been, the libel need not have averred more respecting his ownership than is averred now. * * * There is nothing, then, in the structure of the libel which stands in the way of a recovery against Hammond as owner, unless it be that others are also sued with him. And surely that is no bar to a recovery against him. The libel is for a tort, and tort-feasors are jointly and severally responsible. At common law, when several are sued, there may be a recovery against one alone, or against more than one, and less than the whole number. We know of no reason for a different rule in admiralty."

A reading of the facts in this case does not disclose any application to the facts in the instant case. The charterer shall be deemed the owner for the purpose of the act. Section 4286, supra. The purpose of the act is fixing the liability of the ship and limiting the charterer's liability to his interest in the ship. The personal liability was the only issue, and the only issue discussed or determined. After this decision, and June 26, 1884 (23 Stat. 53, c. 121), Congress passed an "Act to remove certain burdens of the American merchant marine, and encourage the American foreign carrying trade and for other purposes." Section 18 of the act provides:

"The individual liability of a shipowner shall be limited to the proportion of any and all debts and liabilities that his individual share of the vessel bears to the whole and the aggregate liabilities of all the owners of the vessel on account of the same shall not exceed the value of such vessel and freight pending." Comp. St. 1913, § 8028.

There is a proviso, however, that this shall not apply to wages due to persons employed by shipowners. This section was designed to limit the liability of owners for acts not strictly maritime, or for a tort not maritime, and the Supreme Court, in Richardson v. Harmon, 222 U. S. at page 103, 32 Sup. Ct. at page 29, 56 L. Ed. 110, says:

"The legislation is in pari materia with the act of 1851 (9 Stat. 635, c. 43, § 3), as carried into the Revised Statutes as section 4283 et seq. (U. S. Comp. Stat. 1901, p. 2943), and must be read in connection with that law, and, so read, should be given such an effect not incongruous with that law, so far as consistent with the terms of the later legislation. The former law embraced liabilities for maritime torts, but excluded both debts and liabilities for nonmaritime torts. The section under consideration includes debts, save wages of seamen and liabilities of an owner incurred prior to the passage of the law. The avowed purpose of the original act was to en-

courage American investments in ships. This was accomplished by confining the owner's individual liability, when not the result of his own fault, in the instances enumerated, to his share in the ship. The same public policy is declared to be the motive of the act of which this section is a part."

Reading this provision into the act of 1851, supra, the liability clearly is limited to the interest in the vessel. The scope of the Limitation of Liability Act has been greatly widened since the decision of Norwich Co. v. Wright, in 1871, 13 Wall. 104, 20 L. Ed. 585, and Richardson v. Harmon, supra, further enlarges it. It has been uniformly held that the liability may be limited by any of the owners of the vessel or part owners who had no privity or knowledge of any claim or liability. Hughes on Admiralty, p. 310; Benedict on Admiralty, p. 518. Both the owner and charterer here are seeking to limit liability. Judge Lanning, in Cook v. Smith, 187 Fed. 538, at page 541, 109 C. C. A. 304, at page 307, speaking of the act of June 26, 1884, says:

"We think it clear that the act is applicable to cases of personal injury, and that the proportion of a part owner's liability for damages in a case of personal injury, if the injury occur without the privity or knowledge of any of the owners, is the proportion which his interest in the vessel bears to all the interests therein, and not more."

Rule 54 of the Supreme Court (29 Sup. Ct. xlv) provides that when a ship or vessel shall be libeled, or the owner or owners shall be sued, and if they shall desire to claim the benefit of the limitation of liability provided for and now employed in section 4283 et seq., supra, a petition shall be filed in the District Court specifying the facts, circumstances on which such limitation of liability is claimed, and praying proper relief in that behalf. Appraisement of the value of the interest or interests of said owner or owners *respectively* in such ship or vessel and her freight for the voyage shall be made, and the court "shall make an order for the payment of the same into court or for the giving of a stipulation with sureties for the payment thereof into court whenever the payment thereof shall be directed." The stipulation is not to answer for any liability or default which may be found against either of the petitioners, but the stipulation must provide that the principal obligor shall pay into the registry of the court the full sum of the bond, the appraised value of the interest of the obligor, whatever it may be, when so ordered by the court. From the fact that under the limitation of liability statute the vessel is liable in any event, it seems to me that under the petition filed, and the possession of the vessel by the United States marshal under monition from this court, and a prayer on the part of the owner that the value of the vessel be fixed, and a stipulation be permitted to be filed, this affords sufficient consideration for the owner to file a bond for the release of the vessel. If the owner has no such right, he would be remediless if the charterer was unable or unwilling to deposit the money or make the stipulation, and admiralty rule 54 could not be invoked with relation to an owner so placed. The court could not decline a deposit of $180,-000 by the owner under the circumstances for the release of the vessel. If the bond could not be collected, the money could not be held. I think that an order should be entered for the payment into court

by the owner of the sum of $180,000, the value of its interest in the vessel, and the payment into court of $6,000 by the charterer, the value of its interest in the vessel and pending freight, or the filing, after approval by the court, of stipulations by the said respective parties in the said respective sums, with sureties for the payment thereof into court whenever the same shall be ordered, and upon compliance with such order the usual monition issue.