### TURNER v. UNITED STATES.

### BRITISH & ARGENTINE MEAT CO., Limited, v. SAME.

### BRITISH BOARD OF TRADE v. SAME.

Circuit Court of Appeals, Second Circuit.
June 11, 1928.

No. 319.

1. **Collision** ☞115—**Charterer, owning refrigerating plant valuable only as part of ship at fault for collision, must share losses.**

Vessel being at fault for collision, charterer, owning refrigerating plant which was necessary appurtenance to ship's business and claimed to be part of ship, though removable under charter on termination thereof, must share the losses, in absence of evidence of any other value of such plant than as incident to and for use of ship.

2. **Collision** ☞115—**Ship may be liable for collision wholly apart from owner's liability.**

A ship can be liable for collision wholly apart from its owner's liability; maritime law as to master's position and powers and vessel's responsibility being derived, not from civil law of master and servant or common law, but from commercial usages and jurisprudence of the middle ages.

3. **Admiralty** ☞29—**Pendency of libel in rem does not bar suit in personam on same facts.**

Pendency of a libel in rem is not a bar to a suit in personam arising out of the same facts, as proceedings in rem and in personam may be

joined in one cause of action, where admiralty rules do not prohibit it.

**4. Admiralty ⟨⟩28—Ship is liable as principal for negligence of any one in lawful possession, whether as owner or charterer.**

A ship itself is to be treated in some sense as a principal, and becomes liable for the negligence of any one lawfully in possession of her, whether as owner or charterer.

**5. Admiralty ⟨⟩28—Refrigerator held part of vessel, to which persons damaged may look for reimbursement for vessel's torts.**

Refrigerator *held* part of vessel carrying meat cargoes so as to entitle parties suffering damages to look to it for reimbursement for torts committed by vessel.

Appeal from the District Court of the United States for the Southern District of New York.

Libels by Eleanor Turner, as sole surviving executrix of William Henry Turner, deceased, by the British & Argentine Meat Company, and by the British Board of Trade against the United States. From a part of a final decree limiting libelant Meat Company's recovery to half of its damages and permitting an offset of half of respondent's damages as against such libelant, the latter appeals. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (W. H. McCrann, of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. On April 20, 1920, the American steamship Aseolus, the property of the appellee, and the British steamship Zero, under charter to the appellant, collided, and the latter, with her cargo, sank and became a total loss. The managing owner of the Zero and his co-owners filed a libel for damages for the loss of the hull and on behalf of the crew for their loss of personal effects. The British Board of Trade, as owner of part of the cargo of frozen meats laden aboard the Zero, sued for its loss, and the appellant filed a libel for loss of the value of the charter, its cargo, and as owner of the refrigerating machinery and insulation installed in the Zero. The only question presented upon this appeal is the one involving the loss of the refrigerating machinery and insulation installed on the Zero. The other claims have been disposed of.

[1] The final decree entered provides that the damages of the libelants Turner et al., as owners of the Zero, and the appellant, as owner of the refrigerating plant, are offset by damages sustained by the appellee. The appellant contends that it should have been allowed full recovery for its damages as owner of and for the loss of the refrigerating plant, without deduction or offset. The Zero was under time charter to the appellant for many years. She had been operated as a refrigerating vessel, and was engaged in carrying meat cargoes from South America to British ports. The refrigerating plant was installed in 1896, and remained in the vessel until the time of collision in 1922. It consisted of refrigerating machines, pump installation, pipe line, and was physically attached to the vessel. Under the terms of the charter, the machinery and insulation were to remain the property of the charterer, and to be removed by it and the vessel restored to its original condition under the termination of the charter. It is obliged to share the losses, because the Zero was at fault, and the refrigerating system and the vessel are claimed to be one. Its value was wholly incident to the ship and for its use, and it was a necessary appurtenance to the ship's business. There is no evidence of any other value.

[2] Appellant argues that it is not chargeable with negligence contributing to the collision damage, and therefore, as owner of the refrigerating plant or as charterer, damages may not be recovered as against it. It says that the liability of the ship in rem exists only by virtue of the liability of the owner in personam, and that the liability in rem is really the enforcement of the personal liability of the owner in a proceeding in rem against the ship. In The China, 7 Wall. 53, 68, 19 L. Ed. 67, it was early established that there can be liability of the ship wholly apart from the liability of its owner. The ship can be the offending thing, for it is said:

"The maritime law as to the position and powers of the master, and the responsibility of the vessel, is not derived from the civil law of master and servant, nor from the common law. It had its source in the commercial usages and jurisprudence of the middle ages. Originally, the primary liability was upon the vessel, and that of the owner was not personal, but merely incidental to his ownership, from which he was discharged either by the loss of the vessel or by abandoning it to the creditors."

[3] In Homer Ramsdell Transp. Co. v. La

Compagnie Generale Transatlantique, 182 U. S. 406, 411, 21 S. Ct. 831, 833, 45 L. Ed. 1155, the court said: "At common law, no action can be maintained against the owner of a vessel for the fault of a compulsory pilot." The pending of a libel in rem is not a bar to a suit in personam arising out of the same facts. Proceedings in rem and proceedings in personam are permitted to be joined in one cause of action, where the admiralty rules do not prohibit it. If the right against the ship and that against the owner are mutually coextensive, it would be difficult to justify cases permitting the two actions. Newell v. Norton, 3 Wall. 257, 18 L. Ed. 271; Planet Venus (D. C.) 113 F. 387; La Normandie (C. C. A.) 58 F. 427; Providence, etc., Ins. Co. v. Wager (D. C.) 35 F. 364. In the John G. Stevens, 170 U. S. 113, 18 S. Ct. 544, 42 L. Ed. 969, there was certified and answered by the Supreme Court the following question:

"Is the lien for the damages occasioned by negligent towage, which arose on March 8, 1886, to be preferred to the previous state lien for supplies, the libel for supplies being filed last?"

The court, answering the question in the affirmative, said:

"The offending ship is considered as herself the wrongdoer, and as herself bound to make compensation for the wrong done. The owner of the injured vessel is entitled to proceed in rem against the offender, without regard to the question who may be her owners, or to the division, the nature or the extent of their interests in her. With the relations of the owners of those interests, as among themselves, the owner of the injured vessel has no concern. All the interests, existing at the time of the collision, in the offending vessel, whether by way of part ownership, of mortgage, of bottomry bond or of other maritime lien for repairs or supplies, arising out of contract with the owners or agents of the vessel, are parts of the vessel herself, and as such are bound by and responsible for her wrongful acts. Any one who had furnished necessary supplies to the vessel before the collision, and had thereby acquired, under our law, a maritime lien or privilege in the vessel herself, was, as was said in The Bold Buccleugh, before cited, of the holder of an earlier bottomry bond, under the law of England, 'so to speak, a part owner in interest at the date of the collision, and the ship in which he and others were interested was liable to its value at that date for the injury done, without reference to his claim.' "

[4] In Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591, a tug towing a ship lashed to the side ran into a lighter and damaged the cargo. The navigation was under the exclusive control of the master of the ship, and it was held that only the tug, which alone was negligent, was liable, and not the vessel, but they were two separate and distinct vessels. The John D. Rockefeller (C. C. A.) 272 F. 67, 73, is to be distinguished for the same reason. The Barnstable, 181 U. S. 464, 21 S. Ct. 684, 45 L. Ed. 954, illustrates that the ship, as distinguished from her owner, may be the offending thing. The law in this country is well settled that the ship itself is to be treated in some sense as the principal and becomes liable for the negligence of any one who is lawfully in possession of her, whether as owner or charterer.

[5] That the refrigerator, under the circumstances, was a part of the ship admits of little doubt. It, as part of the res, must share the loss. In The Witch Queen, Fed. Cas. No. 17,916, a vessel was equipped with a diving bell and air pump, and these were held liable for a materialman's lien, which attached to the vessel, because, though not required to put her in navigable shape, they were indispensable to the accomplishment of the enterprise in which she was about to engage. In The Hope (D. C.) 191 F. 243, 246, the ship's engine and a net fixed to the hull of the vessel were held to be parts of the boat for the purpose of satisfying a supply man's lien, even though the net lifter was owned by a third party. In the Manila Prize Cases, 188 U. S. 254, 23 S. Ct. 415, 47 L. Ed. 463, armament appurtenances, including provisions and everything necessary to be used for its purpose, were held to be part of the ship. In The Frolic (D. C.) 148 F. 921, a chronometer, hired to the vessel by a third party, was regarded as part of the vessel in its condemnation and sale. In Paraiso (D. C.) 226 F. 966, oil tanks belonging to the charterer for carrying oil were held to be part of the vessel in limitation proceedings. The only difference in the last case and this is that in the former there was a demised charter while here there is a time charter. The courts do not permit a division of the res when it is made answerable for torts committed by the vessel, and though there be separate ownership of the refrigerating plant, as between the parties to the charter, it is a part of the vessel, to which those suffering damages are entitled to look for reimbursement for torts committed by the vessel.

Decree affirmed.