PETITION OF McALLISTER BROS., Inc., et al.

THE McALLISTER No. 91.

THE J. P. McALLISTER.

No. 19490.

United States District Court
E. D. New York.

Feb. 9, 1951.

Hanrahan & Brennan, New York City, of counsel to Edward A. Sullivan, New York City, proctor for Emanuel Fabiani (William R. Brennan, Jr., New York City, advocate).

Alexander & Ash, New York City, proctors for petitioners (Sidney A. Schwartz, New York City, advocate).

KENNEDY, District Judge.

On April 14, 1950, Emanuel Fabiani, a longshoreman employed by the Terminal Stevedoring Co. Inc., instituted a personal injury action in the New York Supreme Court against McAllister Lighterage Line, Inc. (herein called "Lighterage"). The injury resulted from work allegedly done during an operation involving the lighter McAllister No. 91 and the tug J. P. McAllister.

It should be borne in mind that Fabiani's suit was against the charterer only (Lighterage). In the state court suit Lighterage impleaded Wm. H. Muller Shipping Corporation and Terminal Stevedoring Co., Inc., stating categorically that the lighter on which Fabiani was employed (McAllister No. 91) had been chartered to either or both of the impleaded defendants.

On June 7, 1950, Lighterage, in conjunction with the owner of McAllister No. 91 (McAllister Brothers, Inc.) filed a petition to limit liability. The owner (not a defendant in the state court suit) filed a stipulation for value in relation to the lighter in the amount of $2,500. The *ad interim* stipulation filed by Lighterage as charterer was in the amount of $325—$300 representing charter hire of the tug J. P. McAllister, whose ownership is not disclosed, and $25 for freight arising from the use of the lighter McAllister No. 91. The tug J. P. McAllister was or may have been liable *in rem* to Fabiani, as he now claims. She was at the time of the incident which forms the basis for a suit in the state court under a bare boat charter to Lighterage, or so the petition to limit alleges, although it should be noted that the allegation of the limitation petition in this respect is apparently contradicted by the allegation of the petition to implead in the state court.

Fabiani now moves to dissolve the injunction restraining him against proceeding with his state court action. Fabiani's application would ordinarily be granted as a matter of course, since only a single claim is involved. Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520. However, as a condition of the dissolution of the injunction it will be necessary for Fabiani to stipulate, among other things, that the limitation fund is correct in amount. Petition of Red Star Barge Line, 2 Cir., 1947, 160 F.2d 436, certiorari denied 1947, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859; see also Petition of Moran Transportation Corporation, 2 Cir., 1950, 185 F.2d 386. Although this fund contains a total of $2,525, allocable to McAllister No. 91, the lighter, only $300 has been supplied or stipulated by the charterer (the only party to the suit now pending in the state court) covering the liability arising from any fault in the operation of the tug.

Fabiani urges that Lighterage cannot limit at all, because of the allegations of its impleading petition in the state court suit (alleging a sub-charter), which negates, says Fabiani, the position that Lighterage comes within the scope of the statute, 46 U.S.C.A. § 186, permitting limitation only on the part of a charterer who "shall man, victual, and navigate such vessel at his own expense". That argument can be shortly disposed of. Whether or not Lighterage comes within the scope of the statute is a question of fact which is not ripe for decision until, if ever, there is a judgment in the state court and further proceedings on the petition to limit.

■ But Fabiani presents a more serious question. He says that if Lighterage is to be entitled to limit at all, it should supply not the value of the pending freight but the value of any *vessel* involved. This view certainly finds support in at least one case, The Fort Bragg, D.C.Cal., 1933, 6 F.Supp. 13 and also in Benedict on Admiralty, Sixth Edition, Vol. 3, Sec. 497, p. 416. Even in the absence of statute or authority, it would seem to be only common sense that if a charterer wishes to be treated as an owner *pro hac vice* in order to limit his liability, he must stand in the shoes of the owner in respect of the amount of value surrendered. The owner's right to limit carries with it a reciprocal obligation, and so, to the same extent, should that of the charterer. It is true that in a case where full value of the vessel was deposited by the owner, the charterer was not required to surrender an amount more than the value of his own interest. The Paraiso, D.C.Wash., 1915, 226 F. 966. In the suit at bar the principle last mentioned is applicable to the liability arising from any fault in the operation of the lighter, provided it is clear, as I assume it is, that the damage claimant can have recourse to the entire fund allocable to the lighter ($2,525),[1] even though he neither asserts nor establishes personal liability against the owner in the state court.

■ But the situation in respect of the tug is different. Fabiani has not and could not assert any claim *in rem* against the tug in the state court, and apparently has no basis, or at least has advanced none, for a claim *in personam* against the tug's owners. He has, however, made a claim *in personam* against the charterer of the tug (Lighterage), and the latter seeks to limit any possible liability in respect of fault growing also from the operation of the tug. But on this branch of its petition it has deposited only its own interest ($300), and not the value of the vessel. As a result, Fabiani complains, and I think with justice, that if the charterer (Lighterage) should be cast in damage for personal fault in the operation of both the lighter and the tug, and if it answers the description of a charterer who mans, victuals and navigates these vessels, then limitation might result though the limitation fund is inadequate, so far as the tug is concerned. Even if one were to agree with everything said by Judge Netterer in The Paraiso, supra, upon which the petitioners in limitation rely, the situation here with respect to the limitation fund is nevertheless, markedly different because in The Paraiso the vessel's value, as well as the value of the interest of the charterer, had been deposited, whereas in this case, as far as the tug is concerned, the fund does not contain the value of the vessel, but only the value of the charterer's interest. And if The Paraiso is to be construed as a holding that the charterer's personal liability is limited to his interest in the vessel and that, therefore, he may avail himself of the limitation statute by depositing that amount alone, I simply do not agree with the decision.[2]

I make the following disposition of the motions:

1. Since only a single claim is involved, Fabiani is entitled to a dissolution of the injunction to permit him to proceed as far as judgment in the state court suit.

2. As a condition of such a modification of the injunction Fabiani must enter into the stipulation required by Petition of Red Star Barge Line, supra.

1. If there be any doubt about this, then the *ad interim* stipulation should be clarified so that the amount allocable to the lighter in the limitation fund (2,525) is available to Fabiani as a claimant in limitation even though he establishes liability against the charterer (Lighterage) only.

2. As a matter of fact, anything said by Judge Neterer concerning the extent of the charterer's liability is to be read against the background of the case: the liability sought to be limited was a liability *in rem* as well as *in personam*, as the statement of facts shows. Judge Neterer does not go into the cross-liability between the owner and the charterer, the probability that the owner could recoup against the charterer the amount of any *in rem* liability, and other such obvious matters. Given a solvent charterer, the whole ultimate burden of loss would fall upon it.

578

3. However, since I regard the present fund as inadequate, the petitions for limitation will be dismissed unless the fund is increased so as to include the value of the tug.

This disposition will lead to one of two results:

1. Either the petitioners will increase the amount of the fund, Fabiani will make the required stipulation, and the state court action will then proceed subject to a possible later limitation of the amount of the recovery; or

2. The petitioners in limitation will refuse to deposit the amount of the tug, the petitions will be dismissed, and Fabiani's suit will proceed unhampered in the state court by any future possibility of limitation.

Motions granted as indicated. Settle order on notice.