See also D.C., 293 F.Supp. 425.

Richard A. PAYNE et al., Plaintiffs, Appellees,

v.

SS TROPIC BREEZE, her engines, boilers, furniture, apparel, appliances, appurtenances, equipment, etc., Defendant,

and

Tropical Commerce Corp., Intervenor, Appellant.

No. 7065.

United States Court of Appeals First Circuit.

May 28, 1969.

**708**

David I. Gilchrist, New York City, with whom Eli Ellis, New York City, was on brief, for appellant.

Anthony N. Zock, New York City, with whom Richard C. Lewis and Street & Greenfield, Miami, Fla., were on brief, for National Western Life Ins. Co., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Tropical Commerce Corporation, in February 1966, entered into a time charter agreement with Southern Seas Shipping Corporation, owner of the Vessel SS Tropic Breeze. Provision was made for installation by Tropical of cement loading, bagging and discharging equipment, reserving title thereto but with the obligation to remove at the termination of the charter and "make the necessary restorations." By the charter's terms, Tropical was required to provide the fuel, but the owner was to pay for fuel remaining at termination. Thereafter, with full knowledge of the charter provisions, National Western Life Ins. Co. (hereafter the mortgagee) made a loan to the vessel owners, taking a ship's mortgage. Tropical then received the vessel and installed the equipment, much of which was required to be attached in the nature of a fixture.

The vessel was apparently operated unsuccessfully, and in July 1967 she was libelled in the district court for the District of Puerto Rico for seamen's wages, which, under the charter, the shipowner had contracted to pay. Subsequently Tropical, the mortgagee, and others who had dealt with the ship, intervened with claims. No representative of the shipowner appeared, and all other parties eventually agreed that the vessel and its equipment should be sold in order to terminate heavy custodia legis expenses. The only dispute with regard to this was Tropical's insistence that if the vessel were sold with its equipment, cargo, and remaining fuel, either its title in such property be reserved or the amount of the sale proceeds attributable to such be held free of liens and paid over to it.

The vessel was sold, but the court, for reasons given in a considered opinion, 274 F.Supp. 324, ruled in its order of sale against Tropical's claim, except for allowing removal of the cargo. The court held that the equipment and fuel were appurtenant to the ship and thus subject to maritime liens thereon. Tropical appeals, the net proceeds of the sale being presently retained in the court's custody.

While the appeal is properly before us, 28 U.S.C. § 1292(3), all of the possibly interested parties are not, and some questions even as between Tropical and the mortgagee are not yet argued or presented. Accordingly, we decide only one issue, whether under the mortgage the mortgagee had an interest in the equipment (that term hereinafter to include the fuel oil) superior to (and hence in this case, to the exclusion of) the interest of Tropical.[1] As to this the mortgagee claims that the mortgage attached to the equipment even though, as between Tropical and the shipowner, title thereto was in Tropical.

The mortgage ran against, "the whole of the Vessel, together with all of the * * * furniture, fittings and equipment and all other appurtenances thereto appertaining * * * whether now owned or hereafter acquired, whether on board or not, and all additions, improvements and replacements hereafter made in or to the Vessel (except leased equipment not belonging to the Shipowner)."

A mortgage may properly attach to the property of others which has become an

---

1. If the district court had taken the view of Tropical's interest that we hold it should have, difficult and complicated questions might have been presented whether it should have sold the equipment at all, without reserving title, depending, however, upon the nature of the other liens and their extent compared with the value of the ship, and other considerations that have not been raised and are now foreclosed. Those questions are now submerged into claims against the fund.

appurtenance to the ship conveyed. See United States v. F/V Sylvester F. Whalen, D.Me., 1963, 217 F.Supp. 916; First Suffolk Nat'l Bank of Huntington, v. The Air Brant, E.D.N.Y., 1954, 125 F.Supp. 709. However, in this case the mortgagee took the mortgage with full knowledge of the charter, and hence of the fact that the shipowner would acquire no interest in the equipment. See United States v. F/V Golden Dawn, E.D.N.Y., 1963, 222 F.Supp. 186. Nor did Tropical join in the mortgage. The mortgagee's present insistence with respect to its claim of having acquired a lien on the equipment, that it is an "innocent third party," is therefore not accurate. It has long been the law that a subsequent mortgagee having notice of the reservation acquires no greater rights than were possessed by the mortgagor. See Hunt v. Bay State Iron Co., 1867, 97 Mass. 279; Morris v. French, 1871, 106 Mass. 326. In the present instance the mortgagee had full notice of the prospective reservation of title in Tropical. The fact that the property was not physically attached until after the mortgage was entered into is not significant, given the notice of reservation. The rule as to the rights of a prior non-assenting mortgagee, *see* Medical Tower Corp. v. Otis Elevator Co., 3 Cir., 1939, 104 F.2d 133, is inapplicable. The mortgagee was not "innocent," but took its grant from the shipowner with full knowledge of Tropical's reserved rights. Under these circumstances it could have no greater claim than the mortgagor.

 Nor is this all. The mortgage itself expressly provided that property in which the mortgagor's interest was only as lessee did not pass to the mortgagee even though, legally, it became an appurtenance to the vessel. The mortgagee seeks to distinguish this provision by saying that it applies only to equipment acquired by lease, but not to property attached by a charterer of the vessel. We are not impressed by this distinction. The mortgagee would have it that if the owner of affixed property conveys some title to the shipowner his reserved rights are good, but if he conveys no title, his total rights to the equipment are lost. Just as an after acquired property clause in a mortgage is to be construed against the mortgagee, Cleveland Trust Co. v. Consolidated Gas, Electric Light & Power Co., 4 Cir., 1932, 55 F.2d 211, 214, so is this mortgage clause dealing with property of persons not a party to the conveyance. We will not put a legalistic construction on the word "lease" which leads to such a singular result, particularly when it would defeat the express agreement that the shipowner had made with Tropical prior to the mortgage and of which the mortgagee had full notice.

The case must be remanded to permit the ascertainment of Tropical's share of the proceeds of the sale.[2] We expressly do not decide whether some, or all, other lienors can reach Tropical's share of these proceeds. Nor do we decide whether, even if the other lienors can claim against the proceeds of the equipment, as between the mortgagor and Tropical they must be satisfied first from the proceeds attributable to the ship apart from the equipment. Nor, do we decide the validity of the mortgage or the validity of Tropical's title to any of the property at issue, questions which apparently the court did not conclusively determine.

Finally, we do not decide whether the sale having been confirmed to the mortgagee itself under a stipulation protecting other lienors, the mortgagee in this particular case has a right to encroach upon, even directly, the interest of Tropical in its equipment. It may be that the court confirmed the sale to the mortgagee at this seemingly small sale price on a misconception of Tropical's interest, thinking that since Tropical was subordinate to a sizeable mortgage even if a

---

2. In determining the proportion of the sale price attributable to the equipment the ratio should consist of the appraised fair market value of the vessel restored without the equipment, versus the fair market value of the vessel with the equipment, the term equipment including the fuel oil.

larger sales price were obtained the mortgagee would take it all.

The order of the District Court with respect to the purchase money is set aside; further proceedings to be in accordance with this opinion.