**The SS TROPIC BREEZE.**

**NATIONAL WESTERN LIFE INSURANCE COMPANY, Intervenor-Appellant**

v.

**TROPICAL COMMERCE CORPORATION, Intervenor-Appellee.**

**No. 71-1267.**

United States Court of Appeals, First Circuit.

Heard Feb. 1, 1972.

Decided March 1, 1972.

**138**

Richard C. Lewis, Miami, Fla., with whom Jimenez & Fuste, San Juan, P. R., was on brief, for appellant.

David I. Gilchrist, New York City, for Tropical Commerce Corp., appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The SS TROPIC BREEZE, after nearly five years of litigation and three interlocutory appeals, continues on with the persistency of a tropical trade wind. The case is not without its difficulties. The facts were partially set forth in our original opinion, Payne v. SS Tropic Breeze, 1 Cir., 1969, 412 F.2d 707, hereafter *Payne* I, but they bear some repeating. The TROPIC BREEZE, rigged as a bulk cement carrier, proved incapable of carrying herself, and was libelled by her crew and sold in the District Court of Puerto Rico. The sale date was initially postponed a number of weeks as the result of a stipulation entered into between appellant National

Western Life Ins. Co., National, an intervenor and holder of a ship's mortgage, and appellee, Tropical Commerce Corporation, Tropical, an intervenor and alleged owner of the cement loading, bagging and unloading equipment, and all other claimants. The owner defaulted. In *Payne* I we held that, having had notice of the agreement with the owners under which Tropical could attach, and at the end of the voyage remove the equipment provided it "restored" the vessel, National could not hold the equipment subject to its mortgage. We reversed the district court and remanded the case for further proceedings.[1] It might have been better if we could have resolved a number of other questions, but as we pointed out, they were not properly presented.[2] In a memorandum and order date, June 21, 1971, the district court has now determined that National, as a result of the stipulation, became obligated to pay off Tropical's claim for the value of the equipment—if Tropical in fact owned the equipment—as against National's contention that Tropical was limited to claiming against the proceeds of the sale. The court referred to a master the question of the validity of Tropical's claim to own the equipment, and the value thereof. National appeals.

■ The first question is our jurisdiction. Tropical moves to dismiss the appeal on the ground that although 28 U.S.C. § 1292(a) (3) authorizes appeals from interlocutory decrees "determining the rights and liabilities of the parties to admiralty. cases in which appeals from final decrees are allowed," the order in this case did not sufficiently determine the rights and liabilities of the parties because the court submitted the "merits" of Tropical's claim, as well as the issue of valuation, to a master. We

---

1. In a later opinion, Payne v. SS Tropic Breeze, 1 Cir., 1970, 423 F.2d 236, cert. denied sub nom. Samadjopoulos v. National Western Life Ins. Co., 400 U.S. 964, 91 S.Ct. 363, 27 L.Ed.2d 383, we passed upon certain preferred claims, not presently involved.

2. The parties did not even call to our attention that the court had made extensive findings determining the validity of the mortgage.

disagree. It is true that the usual interlocutory appeal under section 1292(a)(3) is from an order finally determining that one party is liable to another and referring the cause to an assessor for the determination of damages. *E. g.* The Maria, 2 Cir., 1933, 67 F.2d 571; United States v. The Lake George, 3 Cir., 1955, 224 F.2d 117, 118; *see* Texas Co. v. R. O'Brien & Co., 1 Cir., 1955, 225 F.2d 280. The statute is not limited to such situations, however, but, rather, applies to any decree finally determining the liability of one of the parties, even if it leaves open an issue which may, ultimately preclude recovery by a particular plaintiff. Republic of France v. United States, 5 Cir., 1961, 290 F.2d 395, 397–398, n. 4, cert. denied 369 U.S. 804, 82 S.Ct. 644, 7 L.Ed.2d 550. *See also* Rice Growers Ass'n v. Rederiaktiebolaget Frode, 9 Cir. 1948, 171 F.2d 662, 663, cert. denied 338 U.S. 878, 70 S.Ct. 159, 94 L.Ed. 539.

 The district court's order is analogous to the order in *Republic of France.* Tropical concedes that the order determined finally that National's liability to the owner of the equipment was not confined to the proceeds of the sale. The court's opinion expressly states that "National's liability is no longer in issue." The reference to the master of the "merits" of Tropical's claims as well as their valuation, must, if the opinion is to be internally consistent, be a reference only of the question of the validity of Tropical's title to the property at issue, a question which we noted in *Payne* I, at 709, had not been conclusively determined by the district court. The fact that this question was left open does not mean that the court did not adequately determine rights within the meaning of 28 U.S.C. § 1292(a) (3), which broadly permits admiralty appeals.

 Turning to the merits, the facts of life are that when a vessel is sold by court order the claimants are normally limited in the aggregate to the realized proceeds. *See* G. Gilmore & C. Black,

The Law of Admiralty 640–43 (1957). The question is whether the stipulation changed this. In paragraph 1 all parties requested a postponement of the sale. Paragraph 2 stated that this was to enable the court to pass on the proofs and priorities of claims, and possibly to enable National to submit a plan for the continued operation of the vessel (which it did not do). Paragraph 3 suggested a sale date. In paragraph 4 National agreed to deposit in court, forthwith, some $24,000 to cover top priority marshal's expenses and crew's wages. Paragraph 5 read as follows.

> 5. Intervenor National Western Life Insurance Company hereby agrees to deposit into the Registry of the Court the aggregate amount of all such other claims that the Court may find as having priority over the claim filed, as mortgagee, by said Intervenor, such deposit to be made within five (5) days after the Court's determination.

Paragraph 6 provided that National would be subrogated to the rights of any claimants it paid as a result of the stipulation. Paragraph 7 reserved Tropical's rights on appeal from that part of the order of sale which contained a ruling that its equipment was subject to the mortgage.

It having been determined by us, as a result of the appeal, that as between National and Tropical the mortgage did not apply to the cement equipment, the district court ruled that Tropical's right to the equipment was a prior claim within the meaning of paragraph 5, even to the extent of disregarding the subrogation provisions in paragraph 6. In this last it could not possibly be right. In ignoring the subrogation provision the court neglected as well that part of its original opinion, that the equipment was subject to maritime liens, that we did not reverse in *Payne* I. Even as to paragraph 5 the court disregarded Tropical's, and its own interpretation of the stipulation at the time of the sale. We reverse.

It is important to note the sequence of events. To recapitulate, on September 28, 1967, the present parties having been at loggerheads for some time over Tropical's claim to own the cement equipment free and clear, the court ruled that the equipment was not only subject to its pro rata share of the preferred liens, but that it was subject to National's mortgage. On November 1, 1967, all claimants entered into the stipulation. On December 18 the sale was held. No outside bidders appeared, and National bid in the vessel for $90,000 something less than the total amount due on its mortgage.[3] At the hearing to confirm the sale, no one objected except Tropical. Its objections were, to quote the court's memorandum confirming the sale, that National "was the only bidder, that the purchase price of $90,000 is inadequate, and that there was not enough security should the mortgage . . . be disallowed." In finding the price adequate, the court said nothing about Tropical's now asserted right to recover under the stipulation regardless of what was realized.

We have, then, this singular situation. If, as Tropical now contends, National was so anxious to postpone the sale for a few weeks that it had assumed fully not only the unavoidable priority claims, but had also agreed to pay off Tropical in full if, as a result of the appeal, it were held not subject to the mortgage, why did no one mention this at the time, and what possible concern, having a commitment to be paid in any event, could Tropical have had as to the adequacy of the sale's price? Conversely, what reason could National have had for entering into an open-ended obligation to pay Tropical's claim in full, which very possibly runs larger than the mortgage itself, unless, at the least, it received some valuable consideration from Tropical in return? In fact, it received nothing of consequence; neither a waiver of Tropical's appeal, nor even an agreement to acquiesce in whatever price National bid at the sale.[4] It seems clear, accordingly, both from the contemporary conduct of the parties, and as a matter of rudimentary business sense, that the TROPIC BREEZE is sought to be turned into a windfall, simply as a result of an afterthought.

Nor does the language of paragraph 5 of the stipulation, "all such other claims that the Court may find as having priority over the claim filed, as mortgagee, by said Intervenor, such deposit to be made within five (5) days after the Court's determination," support this afterthought. We start with the fact that the court had already determined that Tropical's claim was subordinate, not prior, to National's mortgage. More basically, even when we later reversed the district court, we did not hold that Tropical had a "claim prior" to National's mortgage. So far as the equipment was concerned there was no question of prior and subordinate; National had no claim at all. Conversely, with respect to the vessel, Tropical had no claim at all. In this circumstance it would be a forced meaning to speak in terms of priority claims. Were it necessary to do this in order to effectuate an apparent understanding of the parties, possibly we might have a question. In the absence of such manifestation no question arises. The court's finding that paragraph 5 of the stipulation in-

---

3. A clue as to the absence of bidders may be found in the observation in the court's original memorandum that at the time of the sale Tropical was taking the position (and, as conceded at the present argument before us, openly announcing it) that the sale would not convey good title to the cement equipment. This was wrong, Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 866; *see* G. Gilmore &

C. Black, The Law of Admiralty, ante at 640–42, and a very unsensible act on Tropical's part.

4. The sale was not a consideration. Tropical had already recognized, prior to the stipulation, the desirability of having an immediate sale of the entire vessel and equipment. This appears in the court's original memo of September 28, 1967 ordering the sale.

cluded Tropical's ownership as a "priority claim" which National assumed was clear error, and must be set aside.

Tropical, therefore, may recover only from the fund created by the judicial sale. Under the formula recited in *Payne* I at 709, n. 2, Tropical's rights cannot exceed the proportion of the sale price that is attributable to the equipment. To reach this amount the court must determine, as of the date of the sale, the fair market value of the vessel, restored, without the equipment (V), and of the vessel with the equipment (V plus E). The difference is the value attributable to the equipment (E). Tropical's interest in the proceeds is to be measured by the ratio of E to V plus E. National is to pay interest on Tropical's share from the date of the sale.

Tropical may not, however, recover this full amount. National has paid some $48,000 in claims, of one sort or another, under the stipulation. Under paragraph 6, it became subrogated in the rights of the claims it paid. Because of this subrogation clause, the claims are regarded as still extant, although title to them has shifted. The district court should have recognized that to the extent the equipment was subject to these claims a proportionate part of the sale price attributable to the equipment must be paid to National as subrogee.

 The traditional admiralty rule is that the vessel itself and all equipment which is "an integral part of the vessel and [is] essential to its navigation and operation," are subject to preferred maritime liens on the vessel. *See* Turner v. United States, 2 Cir., 1928, 27 F.2d 134; United States v. F/V Sylvester F. Whalen, D.Me., 1963, 217 F.Supp. 916. The Court explained the theory of this rule in The John G. Stevens, 1898, 170 U.S. 113, 122–123, 18 S.Ct. 544, 548, 42 L.Ed. 969:

"The offending ship is considered as herself the wrongdoer, and as herself bound to make compensation for the wrong done. The owner of the injured vessel is entitled to proceed in rem against the offender, without regard to the question who may be her owners, or to the division, the nature or the extent of their interests in her."

The cement equipment involved in this case is clearly of the type that is subject to such claims. The TROPIC BREEZE became, with the installation of the equipment, a bulk cement carrier. The equipment was essential to its operation as such a carrier. It could not be removed without substantial cost, and the value of the ship would be substantially less without it.[5] The fact that the equipment was owned by Tropical, a time charterer, does not change the result. *See* Turner v. United States, ante; United States v. F/V Golden Dawn, E. D.N.Y., 1963, 222 F.Supp. 186. *See also* C.I.T. Corp. v. Oil Screw Peggy, 5 Cir., 1970, 424 F.2d 767.

On remand, the district court is to determine which of the claims paid by National were of such a nature as to be superior to Tropical's title to the equipment. *Cf.* 46 U.S.C. § 953. National is entitled to recover from the portion of the fund attributable to the equipment that share of the *obligations allocable to the equipment* which it has paid or assumed, with interest from the dates of payment. The proportion formula, of course, will be the same, E to V plus E.

The order of the district court is reversed and the case remanded for further proceedings consistent herewith.

---

5. As examples of cases holding similar equipment subject to preferred maritime liens, *see* Turner v. United States, ante (refrigeration equipment, although not essential to navigation, was "indispensable to the accomplishment of the enterprise in which she was about to engage"); The Witch Queen, D.Cal., 1874, Fed.Cas. No.17,916 (diving bell and air pump); The Hope, D.Mass.1911, 191 F. 243, 246 (net and net lifter); The Paraiso, D.C. Cir.1915, 226 F. 966 (oil tanks); First Suffolk Nat'l Bank v. The Air Brant, E.D.N.Y., 1954, 125 F.Supp. 709 (fish pumps, blocks, and fish boat davits).