[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 7, 2006**
**THOMAS K. KAHN**
**CLERK**

No. 04-14179
_____

D.C. Docket No. 03-00703-T-27-MSS

MOTOR-SERVICES HUGO STAMP, INC.,

Plaintiff-
Third-Party-Plaintiff-
Appellee,

ASAMAR, INC., et al.,

Plaintiffs-Intervenors,

MARITIME TELECOMMUNICATIONS NETWORK, INC.,

Plaintiff-Intervenor-
Appellant,

versus

M/V REGAL EMPRESS, her tackle, equipment, boats,
engines and appurtenances, in rem,
REGAL CRUISES, LTD.,

Defendants-Appellees,

versus

MARINE INVESTMENTS, LTD., et al.,

Third-Party-Defendants.

Appeal from the United States District Court for the
Middle District of Florida

**(February 7, 2006)**

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*], District Judge.

PER CURIAM:

Maritime Telecommunications Network ("MTN") appeals the lower court's ruling that MTN's equipment was appurtenant to the Regal Empress cruise ship and therefore, was subject to maritime liens asserted against the vessel. MTN seeks a ruling from this Court that, as a matter of law, it is entitled to recover the value of its equipment from the proceeds of the sale of the Regal Empress. For the reasons that follow, we affirm.

## BACKGROUND

This case began when Plaintiff Motor-Services Hugo Stamp, Inc. filed a Verified Complaint asserting a maritime lien claim against the Regal Empress, alleging that it had not been paid for work performed in its shipyard. The matter was assigned to a Magistrate Judge who ordered the United States Marshal to arrest the

---

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

ship.

Appellant MTN was a provider of telecommunication and internet services for the passengers and crew of the Regal Empress. In order to provide these services, MTN placed certain equipment on board the ship. It is undisputed that the equipment belonged to MTN, and that MTN alone operated, controlled, serviced, and maintained the equipment. MTN intervened in the case and filed an emergency motion asking that it be allowed to remove its equipment from the ship before the judicial sale took place.

In an Order dated May 20, 2003 ("the May Order"), the Magistrate Judge denied the request, concluding that MTN's equipment was appurtenant to the vessel because it was essential to the ship's mission. At the conclusion of that Order, the Magistrate Judge stated:

> After the sale of the vessel is confirmed, the following sums shall be segregated and placed in the Court's registry to permit the affected parties to file any objections to or appeals of this order: . . .(e) $178,964.00 reserved for M.T.N. . . . If any objection or protest is successful and a fair value is finally determined for the specific property being claimed, those amounts, if any, will be paid in accordance with that finding or judgment. However, in the event that no such protests are made or such protests are unsuccessful, the sums

3

withheld shall be added to the corpus available to pay all lien holders and creditors in the priority established by maritime law.

R6-188 at 20. No "objection or protest" was immediately mounted by MTN. The ship was sold three days later for $1.75 million, and the proceeds were placed in the registry of the district court.

Nearly three months later, on August 12, 2003, MTN filed a motion which it titled Motion for Summary Judgment, but which essentially was a motion for reconsideration of the May Order. In the motion, MTN asked the Court to reconsider its previous ruling that MTN's equipment was appurtenant to the ship, pointing to undisputed evidence that MTN had retained ownership and control over the equipment. In its prayer for relief, MTN asked the Court to release a portion of the sale proceeds to compensate it for the value of the equipment.

On March 29, 2004, the Magistrate Judge entered an Order (later construed as a Report and Recommendation)[1] denying the motion. In the Order, the Magistrate Judge stated that MTN was barred from asserting its claim against the sale proceeds

---

[1] Apparently there was some confusion about whether, at the time that the Magistrate Judge issued the March 29, 2004 Order, all parties had consented to the referral. On April 16, 2004, the District Judge sua sponte withdrew the reference and construed the March 29, 2004 Order as a Report and Recommendation.

4

because MTN did not timely object to the May 20, 2003 Order.[2]  Alternatively, the

Magistrate Judge ruled on the merits of MTN's claim, stating:

> Even assuming, arguendo that the motion was not procedurally barred, it would nonetheless fail.  Incorporating by reference the undisputed facts recited in the Court's May 20, 2003, Order, the same result would obtain in this motion.  Even if the Court were permitted to revisit the substantive issue of law raised in MTN's Motion for Summary Judgment, whether MTN's equipment was appurtenant to the ship, MTN has presented no new evidence and no new binding authority that would alter the Court's initial decision set forth in the May 20, 2003, Order that the equipment was appurtenant to the vessel.

R10-421 at 6.  The Magistrate Judge concluded that the equipment was properly sold

with the vessel at the interlocutory sale, and that the proceeds of the sale were subject

to distribution in accordance with the priority established by maritime law.  On July

16, 2005, the Magistrate Judge re-issued the March 29, 2004 Order as a final,

dispositive Order.[3]

## DISCUSSION

We review <u>de novo</u> a lower court's application of law to undisputed facts.  <u>See</u>

<u>Itel Container Corp. v. M/V Titan Scan</u>, 139 F.3d 1450, 1453 (11th Cir. 1998).

---

[2]  At oral argument, MTN argued that it filed no objection to the May Order because it agreed with the order.  MTN implied that the Magistrate Judge actually ruled in MTN's favor when she segregated the funds.  Such argument clearly mischaracterizes the May Order and is belied by the fact that MTN's Motion for Summary Judgment was, in essence, a motion for reconsideration of the May Order.

[3]  On June 17, 2004, with the consent of all parties, the District Judge referred all aspects of the litigation to the Magistrate Judge for final determination and for the entry of judgment.

In its enumeration of errors, MTN first makes a procedural argument. MTN claims that the Magistrate Judge impermissibly refused to entertain the merits of its motion for summary judgment. The Court disagrees. It is evident from the above-quoted language from the March 29, 2004, Order that in ruling on the summary judgment motion, the Magistrate Judge re-examined the merits of MTN's claim and reached the same conclusion that she previously had reached in her May Order. Because it is undisputed that the Magistrate Judge ultimately was vested with the authority to issue a final, dispositive ruling on MTN's claim, the Court finds no error in the procedures employed by the trial court in resolving that claim.

Thus, the Court turns to the heart of this appeal, which is MTN's contention that its equipment was improperly characterized as being appurtenant to the ship. MTN argues that because it owned the equipment outright, it is entitled to recover the full value of its equipment, without regard to the rights of the various lien claimants. While at first blush this argument is appealing, it simply is not the law.

A fundamental principle of the maritime lien system is that the vessel itself, along with all equipment aboard it that is essential to the ship's navigation and operation, is subject to maritime liens. See SS Tropic Breeze v. Tropical Commerce Corp., 456 F.2d 137, 141 (1st Cir. 1972) (holding that cement loading, bagging, and unloading equipment was essential to the ship's ability to function as a bulk cement

6

carrier, and therefore the equipment was subject to maritime liens). This is true, regardless of who the actual owner of the equipment may be. See id.; see also The Augusta, 15 F.2d 727, 727 (E.D. La. 1920) (concluding that a wireless telegraph was appurtenant to the vessel even though the equipment's owner had merely licensed its use aboard the ship). This rule balances the interests of keeping ships active and protecting maritime businesses who provide goods and services on credit by making the entire vessel, including all of the equipment essential to the completion of the voyage upon which it is embarked, stand as security for the debt. See Tramp Oil & Marine, Ltd. v. M/V Mermaid I, 630 F. Supp. 630, 635 (D.P.R. 1986). Throughout the years, courts have ruled that radio equipment, uninstalled replacement engines, and even fishing permits were essential to their vessels' purposes and, therefore were appurtenances subject to maritime liens. See The Augusta, 15 F.2d at 727-28 (radio equipment); Gonzalez v. M/V Destiny Panama, 102 F. Supp. 2d 1352, 1354-1357 (S.D. Fla. 2000) (uninstalled engines); Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 67-70 (1st Cir. 2001) (fishing permits).

The question raised by this case is whether equipment necessary for the provision of telecommunications and internet services aboard a luxury cruise ship is essential to the vessel's mission. There can be no doubt that it is. As the Magistrate Judge noted in her May Order, it is unimaginable in today's world that a luxury cruise

7

ship could be successful without a fully functioning telecommunications system. Because such a system is vital to the mission of the Regal Empress, the Magistrate Judge correctly concluded that MTN's equipment was appurtenant to the ship.

**AFFIRMED**.