The BANK OF NEW ORLEANS AND TRUST COMPANY, Plaintiff-Appellee,

and

Stapp Bros. Towing, Inc., Intervenor-Appellee,

v.

MARINE CREDIT CORPORATION, Intervenor-Appellant.

No. 77–1732.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1978.

Decided Sept. 20, 1978.

Frank J. Dantone of Swank, Land & Associates, Greenville, Miss., for appellant Marine Credit Corp.; Joel J. Henderson, Greenville, Miss., filed briefs.

Charles A. Newman of Thompson & Mitchell, St. Louis, Mo., for appellee Bank of New Orleans; Michael D. O'Keefe, St. Louis, Mo., filed brief.

John B. Carothers, III, St. Louis, Mo., for appellee-intervenor Stapp Bros. Towing, Inc.; Wayne K. Anderson, Hinds & Meyer, Houston, Tex., filed brief.

Before HEANEY and HENLEY, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

This is an appeal in an admiralty case from the district court's[1] dismissal of Marine Credit Corporation's (Marine) motion to reclaim electronic equipment from four oil screws on which the Bank of New Orleans and Trust Company (the Bank) instituted an in rem action to foreclose preferred ship mortgages. See 46 U.S.C. § 951. Because the res is no longer under the juris- diction of the district court, we dismiss the appeal for want of jurisdiction.

The pertinent facts are uncomplicated. The Bank was the holder of properly perfected preferred ship mortgages on four vessels, the M/V BAYOU LAFOURCHE, the M/V BAYOU ST. JOHN, the M/V BAYOU TERREBONNE, and the M/V BAYOU CHENE. See 46 U.S.C. §§ 921–22, 953. On January 31, 1977 the Bank filed its complaint in the district court alleging, inter alia, that defendant mortgagors named in the complaint were in default on a promissory note secured by the preferred ship mortgages. The complaint sought warrants of arrest for the vessels, foreclosure of the preferred ship mortgages, and judgment for the balance owing on the promissory note. The complaint specifically asked for condemnation and sale of the vessels, "their engines, tackle, apparel, furniture, and equipment." See Rule C, Supplemental Rules, F.R.Civ.P.

The vessels were subsequently seized by the U. S. Marshal and the district court ordered notice of the seizure published in a newspaper of general circulation. No person appeared to claim an interest in the vessels or to otherwise resist the foreclosure as provided in the published notice of seizure. See Rule C(6), Supplemental Rules, F.R.Civ.P. Accordingly, the district court entered default judgment against the vessels, including their equipment, and ordered them condemned and sold on April 29, 1977. *Bank of New Orleans and Trust Co. v. Big B Towboat Services, Inc.*, 435 F.Supp. 997, 1001–02 (E.D.Mo.1977).

Notices of the impending sale of the vessels were published on May 7, 1977, May 14, 1977, and May 28, 1977. On May 19, 1977 Marine filed a motion to intervene pursuant to Rule 24, F.R.Civ.P. In its motion, Marine alleged that in 1973 and 1974 Specialized Electronics leased certain electronics

---

* The Honorable William C. Hanson, Senior District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

equipment to Big B Towboat Services, Inc.,[2] a mortgagor defendant, and certain affiliated corporations, for placement on the vessels in question. Marine, assignee of the leases in question, sought intervention to recover rent due, and asked leave to file a "Motion to Reclaim" to recover the equipment. Involved were radar units, radio telephones, and similar electronic paraphernalia. The district court granted the motion to intervene on May 20, 1977.

The vessels were sold on June 3, 1977. The Bank was the high bidder on the M/V BAYOU ST. JOHN, the M/V BAYOU CHENE and the M/V BAYOU TERREBONNE. Stapp Bros. Towing, Inc., bid the highest on the M/V BAYOU LAFOURCHE. Thereafter, on June 6, 1977, the district court entered orders confirming the sale of the vessels. That same day, the U. S. Marshal executed a bill of sale for the M/V BAYOU LAFOURCHE. On June 13, 1977 the Marshal executed bills of sale for the remaining three vessels.

After its motion to intervene was granted on May 20, Marine took no further action until June 14, 1977, after the vessels had been sold and bills of sale executed. At that time Marine filed its "Motion to Reclaim" in which it alleged that it was assignee of the leases of electronic equipment located on the vessels, that the leases were in default, and asked that it be permitted to remove the equipment. At no time prior to the sale of the vessels and their equipment did Marine seek recovery of its alleged property pursuant to Rule C(6), Supplemental Rules, F.R.Civ.P. Nor did Marine take any action in the district court to stay sale of the vessels or disposition of the proceeds

until its ownership interest was adjudicated.

On June 17, 1977 the district court entered its order establishing priorities and distributing the proceeds of the sale of the vessels.[3] The district court recognized Marine's claim for rent on the delinquent leases in the amount of $21,736.37 as a maritime supply lien, but with respect to all the vessels, held that the Bank had a preferred mortgage lien having priority over Marine's ordinary supply lien. See 46 U.S.C. §§ 951, 953. The proceeds were exhausted in satisfaction of the Bank's preferred mortgage lien, and preferred maritime liens asserted by other parties, with the result that no funds remained to settle the lower priority claims of Marine.

Marine subsequently filed a "motion to alter, amend and/or correct order establishing priorities and distributing the proceeds" on June 23, 1977. Marine sought, *inter alia,* amendment of the court's order to allow removal of the electronic equipment. Marine appeared to accept the district court's decision as it related to Marine's lower priority on its claim for delinquent rent, and we do not understand Marine to have appealed from that aspect of the district court's rulings. On June 24, 1977 Stapp Bros. Towing, Inc., the purchaser of the M/V BAYOU LAFOURCHE entered a restrictive appearance for the limited purpose of protecting its title in the vessel by opposing the motion to reclaim. See Rule E(8), Supplemental Rules, F.R.Civ.P.

After a hearing, the district court dismissed Marine's motion to reclaim and overruled the motion to alter or amend, for four reasons: (1) lack of jurisdiction over the

---

**2.** Marine's motion to intervene stated that the equipment had been leased to "Big B Towing Company" and the leases attached to the motion and supplement reflect a diversely styled group of corporate lessees. The Bank's complaint, on the other hand, was brought against "Big B Towboat Service, Inc." and three other corporate entities sharing the same address. Big B Towboat Service and the other named mortgagor defendants in the complaint appear as the named lessee in many of the leases. It is not clear on the present record whether Big B Towboat Services and Big B Towing Company

are separate entities. However, any distinction between the two is not material to the disposition of this appeal.

**3.** The district court did not address Marine's motion to reclaim in its order distributing proceeds, nor need it have since the motion sought only return of the electronic equipment in recognition of Marine's asserted ownership interest and, unlike Marine's earlier motion to intervene, did not purport to interpose a maritime lien.

vessels; (2) lack of a substitute res in view of the fact that proceeds from the sale of the vessels had been distributed;[4] (3) Stapp Bros. was a bona fide purchaser for value without notice; and (4) the motion was not timely. It is from the district court's order of dismissal that Marine appeals.

Marine insisted in the district court and in this Court that its motion to reclaim was directed specifically to the recovery of the possession of the electronic equipment involved. Marine did not attempt to secure the value of its alleged property from the proceeds of the sale of the vessels in the district court, and it has only been in this Court, and then reluctantly, that Marine indicated a willingness to accept a monetary substitute for the equipment.

Accordingly, the primary issue is whether, on the facts of this case, in rem jurisdiction over the vessels remains to grant relief in the nature of the return of electronic equipment, after the vessels have been sold at a Marshal's sale. We hold that the district court does not retain jurisdiction. We also hold that, inasmuch as Marine did not heretofore seek recovery of the value of its alleged property and all proceeds have now been distributed, the district court is without in rem jurisdiction to determine whether Marine is entitled to have its asserted ownership interest satisfied out of proceeds. It follows that the appeal is now moot.

■ For present purposes, we assume arguendo that substantive proposition of law on which Marine rests, that as a security instrument pledging the mortgagor's ownership interest in a vessel a preferred ship mortgage does not extend to equipment which a mortgagor does not own and therefore could not mortgage; for example, leased equipment. See *C.I.T. Corporation v. Oil Screw Peggy*, 424 F.2d 767, 768 (5th Cir. 1970); *Payne v. SS Tropic Breeze*, 412 F.2d 707, 708–09 (1st Cir. 1969); *First National Bank and Trust Co. v. Oil Screw Olive L. Moore and Barge Wiltranco I*, 379 F.Supp. 1382, 1390–91 (W.D.Mich.1973), *aff'd* 521 F.2d 1401 (6th Cir. 1975); *United States v. F/V Golden Dawn*, 222 F.Supp. 186, 188 (E.D.N.Y.1963). Marine asserts that the equipment in question was leased to the defendants in the foreclosure action and that it is entitled to board the vessels and remove it. This, of course, raises at least one factual issue which has not been properly presented to the district court; whether the leases in question were true leases, or were intended to operate as a form of conditional sales contract.[5] See *C.I.T. Corporation v. Oil Screw Peggy*, supra at 768; *United States v. F/V Golden Dawn*, supra at 186–87. If the latter, Marine's claim as against the Bank's preferred ship mortgage would be no greater than that of a maritime lienholder. 46 U.S.C. § 971. See *Layton Industries v. Sport Fishing Cruiser Gladiator*, 263 F.Supp. 356, 359 (D.Mass.1967). Accordingly, we operate under no assumption that Marine is attempting to recover leased property; rather, the question is better stated in terms of whether in rem jurisdiction remains so that the district court may properly address factual issues of this nature.

■ The Bank's foreclosure of its preferred ship mortgages was, by statutory definition, accomplished through a "suit in rem in admiralty." 46 U.S.C. § 951. Gen-

---

4. The Bank was excused by the district court from having to deposit funds in the registry of the court for the vessels it purchased in view of the fact that the Bank had bid less than the amount due and owing on the foreclosed mortgages. The Bank thereby incurred an obligation to pay into the registry of the district court, upon order of the court, such funds as would be necessary to satisfy the claims of creditors holding a preferred maritime lien, or any other claims to the substitute res having priority over the Bank, up to the amount the Bank bid on the vessels.

5. While the pertinent instruments are in lease form, each sets forth a "price" to be paid in installments during the life of the lease with a "carrying charge" for payments that are overdue. Multiplying the number of payments times the amount of each payment reflects substantial interest in each case above the amount of the stated price. Moreover, the form leases employed specify in typical "boilerplate" language that they may be renewed at the "renewal rate" stated in the lease; however, in none of the leases is a renewal rate stated. That portion of the lease is blank.

erally, removal of the res from a court's jurisdiction, or distribution of a substitute res deposited in the registry of the court, destroys in rem jurisdiction. *See Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1151–52 (5th Cir. 1977); *Platoro Ltd. v. Unidentified Remains of a Vessel,* 508 F.2d 1113, 1115–16 (5th Cir. 1975); *American Bank of Wage Claims v. Registry of District Court of Guam,* 431 F.2d 1215, 1218–19 (9th Cir. 1970); *Martin v. Bud,* 172 F.2d 295, 296 (9th Cir. 1949). *See also* Rules C(2), E(3)(a), Supplemental Rules, F.R. Civ.P.[6]

 Though Marine's motion to intervene requested leave to assert a motion to reclaim its allegedly leased equipment, Marine did not attempt to pursue its ownership interest until it filed its motion to reclaim on June 14, 1977, after the vessels had been sold and confirmation thereof ordered by the district court. *See Wong Shing v. M/V Marinda Trader,* 564 F.2d 1183, 1188–89 (5th Cir. 1977). Admiralty procedure is generally to be liberally construed to enable creditors to assert their claims against a libeled vessel. *See The Charles D. Leffler,* 100 F.2d 759, 760 (3d Cir. 1938). But it was incumbent on Marine, if it desired the return of specific property, to put its owner-

ship clearly in issue before foreclosure and sale by filing its claim in accordance with Rule C(6), Supplemental Rules, F.R.Civ.P., followed by an answer to the Bank's complaint, *see* 7A *Moore's Federal Practice* ¶ C.16, at 700.13–15,[7] or by timely filing a proper motion to intervene.[8] Rule 24(c), F.R.Civ.P. Marine failed to employ either of these well-defined mechanisms. And, even if it had, Marine was obligated to seek release of the property pending the judgment of the district court, a stay of execution of the district court's judgment, or file a supersedeas bond—in other words, to take some action to preserve the res until Marine's in rem ownership claim was adjudicated in the district court and reviewed on appeal. *See* Rules 60(b), 62(b), (d), F.R. Civ.P.; Rule E(5), Supplemental Rules, F.R. Civ.P.; Rule 8, F.R.App.P. *See also The Denny,* 127 F.2d 404, 406–07 (3d Cir. 1942). Instead, Marine took no action to either assert its ownership claim before sale of the vessels, or to preserve the district court's in rem jurisdiction for purposes of appeal. No satisfactory explanation has been advanced for this failure. The vessels were sold and passed out of the control of the district court in due course. Clearly, the district

6. Where the res is taken from the jurisdiction of the court through accident, fraud, or improper removal, the long recognized rule is that in rem jurisdiction is not destroyed. *See The Rio Grande,* 90 U.S. (23 Wall) 458, 465, 23 L.Ed. 158 (1874). It cannot be contended on the present record, however, that any of these criteria are applicable.

7. In this regard, it should be noted that notice of the vessels' seizure was published in a newspaper of general circulation on February 5, 12, and 19, 1977. Parties claiming an interest in the vessels and, *inter alia,* their "equipment" were notified that they must assert their claims in district court within twenty days from the first date of publication. *See* Rule C(4), Supplemental Rules, F.R.Civ.P. No claims were forthcoming and on April 29, 1977, the district court entered its default judgment against the vessels, including specifically, their "equipment." Marine filed its motion to intervene on May 19, 1977 after initial publication of the notice of sale issued pursuant to the district court's default judgment.

In view of the fact that Marine failed to contest the condemnation of its equipment as part of the vessels prior to the entry of the

district court's default judgment, and failed to seek relief therefrom a question exists as to whether that judgment, which condemned for sale "equipment" on each of the vessels, was res judicata with respect to any possessory interest in the equipment. *See Brown v. Kenron Aluminum and Glass Corp.,* 477 F.2d 526, 531 (8th Cir. 1973); 7A *Moore's Federal Practice* ¶ C.16, at 700.13. However, since we hold that this appeal must be dismissed on jurisdictional grounds and, in any event, the appellees have not interposed res judicata, we do not address the issue. We note only that where a party claims ownership or possession of property which is the subject of an action in rem, Rule C(6), Supplemental Rules, F.R.Civ.P., provides an appropriate method by which to assert his claim.

8. Marine's motion to intervene was not accompanied by a pleading setting forth its claim as required by Rule 24(b), F.R.Civ.P. Though the motion to reclaim might well have been viewed as such a pleading, that motion was not filed until after sale of the vessels.

court no longer has jurisdiction to afford Marine any in rem relief which would operate on specific items of equipment. *See Schaaf v. S.S. North American,* 368 F.2d 925, 926–27 (3d Cir. 1966).[9]

■ In any event, the result sought by Marine is pregnant with potential for abuse. Any procedure which would permit in rem claims to be asserted after foreclosure and sale of chattels on the basis of an antecedent ownership interest would obviously render title taken by a purchaser at a judicial sale of doubtful value. Thus we are inclined to agree with the district court that Marine's motion to reclaim was untimely.

■ There remains the question of whether jurisdiction exists to grant relief to Marine from the proceeds of the sale of the vessels, the substitute res. Assuming that an award from proceeds to compensate a party asserting an ownership interest is permissible, on the facts of this case we hold that no in rem jurisdiction exists to make a post-distribution alteration in the district court's disposition of proceeds.

In *Inland Credit Corp. v. M/T Bow Egret, supra,* the Fifth Circuit concluded that it retained in personam jurisdiction on appeal to correct errors in a district court's in rem adjudication of entitlement to the proceeds from the sale of a vessel. The proceeds had been distributed and the appellant lienholders had not sought a stay or filed a supersedeas bond. Finding itself at the "interface of in rem and in personam jurisdiction," the Fifth Circuit determined that it could exercise "broad in personam power" to correct error. *Id.* at 1152. The Fifth Circuit recognized that in so holding it was departing to some extent from usual notions as to the limitations of in rem jurisdiction.

Marine asks us to apply the principle of *Inland Credit.* However, even if we were to agree with the rationale of the Fifth Circuit, *Inland Credit* is completely inapposite here. *Inland Credit* presented a situation where lien claims were asserted against proceeds and the district court made an erroneous distribution. Here, however, the only claim Marine ever asserted against the proceeds of the sale of the vessels in the district court was its claim for overdue rental payments, the disposition of which is not here in issue. Marine never asked the district court for satisfaction of its alleged ownership interest out of proceeds, for it consistently insisted on return of the equipment. Even as late as Marine's motion to alter or amend the district court's order distributing proceeds, Marine asked only that it be permitted to "assert its claim against its leased equipment *and remove it from the vessels which are subject to the above action.*" (Emphasis added.) The motion to reclaim was to the same effect. It follows that the district court could not have committed error in distributing proceeds that Marine never claimed. Thus the original in rem error on which *Inland Credit* was predicated is missing here. Since the proceeds have now been properly distributed, it is too late to assert new in rem claims against them.

We know of no admiralty procedure or equitable principle which would warrant the exercise of in personam power against the Bank to, in essence, recreate a substitute res in order to permit the adjudication of an ownership claim which could and should have been placed in issue in the district court in the normal course of in rem jurisdiction.

Appeal dismissed.

---

**9.** In *Nilo Barge Line, Inc. v. M/V Bayou Du-Large,* (1978) 584 F.2d 841, another panel of this Court recently rejected, *inter alia,* an attempt by Marine Credit to reclaim leased equipment from a vessel under different facts.