UNITED STATES of America, Plaintiff,

v.

**REAL PROPERTY LOCATED AT: 1447 PLYMOUTH, S.E., GRAND RAPIDS, MICHIGAN, and all Appurtenances thereto, Lying in Kent County, Michigan, and Any and all Proceeds from the Sale of Said Property, Defendant.**

UNITED STATES of America, Plaintiff,

v.

**ONE 1985 HONDA ACCORD VEHICLE IDENTIFICATION NO. 1HGAD7435FA079174, Defendant.**

UNITED STATES of America, Plaintiff,

v.

**THREE HUNDRED THIRTY SEVEN THOUSAND ONE HUNDRED FORTY EIGHT AND 23/100 DOLLARS ($337,-148.23) UNITED STATES CURRENCY, Defendant.**

Nos. G85–1155 CA1 to G85–1157 CA1.

United States District Court,
W.D. Michigan, S.D.

Dec. 27, 1988.

Edith Landman, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

James M. Catchick, Grand Rapids, Mich., Robert M. Simels, New York City, Thomas VanHattum, Grand Rapids, Mich., for defendants.

## OPINION

HILLMAN, Chief Judge.

These actions, begun on November 26, 1985, and concluded nearly two years ago,

were in rem civil forfeiture proceedings brought by the United States against various articles of real and personal property used in or traceable to transactions involving illegal drugs. Cases G85–1155 CA1 and G85–1156 Ca1 were closed by default judgments of forfeiture entered July 21, 1986. Case G85–1157 CA1 was closed by a final order of forfeiture entered January 22, 1987, which followed default judgments rendered on January 8, 1986 and July 21, 1986. The matter is again before me at this late date on the motions of Boyer Alfredo Bracy, filed September 1, 1988, to vacate these default judgments.

Bracy contends that he had a "proprietary interest" in the property forfeited in all three cases. This is the first the court has heard of any such claim to the real estate and automobile respectively involved in cases G85–1155 CA1 and G85–1156 CA1. Bracy did assert an untimely claim to $150,000 of the currency at issue in case G85–1157 CA1, through an earlier motion to vacate default judgment, filed January 16, 1986. The court denied that motion on January 5, 1987. Bracy now apparently claims the entire $337,148.23 involved in the latter case. Despite these comprehensive claims, the present motion seeks only the release of such funds as will enable him to pay reasonable attorney's fees incurred defending a criminal action recently concluded before Judge Gibson of this court.

## I. FACTS

Bracy and several associates were arrested at or near the Kent County Airport in Grand Rapids on June 5, 1985. At the time of the arrest, authorities confiscated a suitcase containing hundreds of thousands of dollars in cash. A criminal complaint was filed against Bracy in this district, charging violation of the federal drug laws. On July 31, 1985, the complaint was dismissed without prejudice by Magistrate Brenneman of this court. The government subsequently sought civil forfeiture of the money seized from the suitcase, along with additional funds and assets, as fruit or instrumentalities of illegal drug trading under 21 U.S.C. § 881(a)(6).

At the time the complaints were filed in the present cases, Bracy was in the federal penitentiary at Sandstone, Minnesota. He was served there on December 4, 1985, with copies of the forfeiture complaints and arrest warrants for the complaints' subject real estate, automobile, and currency. Bracy consulted a lawyer about the forfeiture proceedings, but the lawyer failed altogether to respond to the complaints in cases G85–1155 CA1 and G85–1156 CA1.

Bracy likewise did not timely answer the complaint filed in case G85–1157 CA1. Accordingly, the court entered default judgment covering the unclaimed portion of the currency at issue on January 8, 1986. Eight days later, Bracy moved to set aside the default judgment as to $150,000. On January 5, 1987, the court denied the motion, finding that the default resulted from Bracy's culpable conduct. The court also found an asserted defense that the $150,000 was generated by legitimate business activity to be unmeritorious. The entire $337,148.23 was forfeited to the United States by final order dated January 22, 1987. The United States has since distributed the funds involved in case G85–1157 CA1 to various local law enforcement agencies. The real property and automobile forfeited in the other cases were apparently returned to the secured creditors.

Sometime after Bracy was served with the relevant papers in these cases, he escaped from federal prison in Minnesota. He remained at large until he was captured in Florida in May 1987. In July 1987 the grand jury in this district handed down a thirty-three count indictment charging Bracy with drug-related crimes, and the case was assigned to Judge Gibson. In pretrial proceedings before Judge Gibson, Bracy made several motions "for release of seized property" that were apparently directed at the property already disposed of by order of this court. Judge Gibson denied the motions because, among other things, he lacked in rem jurisdiction. Bracy consequently brought the instant motions in this court on September 1, 1988.

On September 7, 1988, Bracy plead guilty to a two count superseding information

charging him with income tax evasion, and engaging in a continuing criminal enterprise (CCE) to possess with the intent to distribute cocaine. On November 17, 1988, Judge Gibson sentenced him to ten years' imprisonment on the CCE drug offense, to be served consecutively with an earlier sentence imposed for his prison escape. Bracy received five years' imprisonment for the tax conviction, to be served concurrently with his CCE sentence.

## II. LAW

### A. Jurisdiction

■ Bracy does not dispute that this court's jurisdiction in these cases is or was based at least in part upon the doctrine of in rem jurisdiction. Nor does he dispute the fact that the *res* which provided jurisdiction in each case is not now within the court's control, each item having been distributed long ago by the United States in execution of the judgments in its favor. Accordingly, he cannot dispute that the court presumptively lacks in rem jurisdiction to consider the present motions. *See, e.g., United States v. Henderson,* 844 F.2d 685, 688 (9th Cir.1988); *United States v. One Lear Jet Aircraft,* 836 F.2d 1571, 1574 (11th Cir.) (en banc), *cert. denied,* — U.S. ——, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988); *United States v. $79,000 in United States Currency,* 801 F.2d 738, 739 (5th Cir.1986) (per curiam); *United States v. One 1979 Rolls-Royce Corniche,* 770 F.2d 713, 716–17 (7th Cir.1985); *United States v. $57,480.05 United States Currency and Other Coins,* 722 F.2d 1457, 1458–59 (9th Cir.1984); *Bank of New Orleans & Trust Co. v. Marine Credit Corp.,* 583 F.2d 1063, 1068–69 (8th Cir.1978).

■ Bracy attempts to rebut this presumption, however, by invoking the exception embodied by *The Rio Grande,* 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1875). That venerable case holds that the court's jurisdiction remains over the *res* in an in rem action if it is accidentally, fraudulently, or improperly removed or released from the court's control. 90 U.S. at 465. The exception does not apply in these cases. Bracy has not shown that the government's re-

turn to creditors of the real estate and automobile forfeited in cases G85–1155 CA1 and G85–1156 CA1, and its distribution of the currency forfeited in case G85–1157 CA1, were accidental or fraudulent.

Moreover, it is clear that the distribution of these assets was "proper" within the meaning of *The Rio Grande.* The distribution was undertaken by the United States in execution of judgments duly entered by this court. Even if these judgments were in error, which I do not believe they were, the government had every right to rely on them absent an appeal and action to stay their execution. *One Lear Jet Aircraft,* 836 F.2d at 1574 n. 2; *$79,000 in United States Currency,* 801 F.2d at 740; *One 1979 Rolls-Royce Corniche,* 770 F.2d at 716–17; *The Denny,* 127 F.2d 404, 407 (3rd Cir.1942). Needless to say, Bracy has never appealed any action taken by this court, and he never attempted to stay the government's execution of judgment against what he now claims were his assets.

Because this court no longer controls the *res* at issue in each of these cases, and the release of each *res* was not occasioned by accident, fraud, or impropriety, I conclude, like Judge Gibson, that this court lacks in rem jurisdiction to entertain Bracy's motions regarding these properties.

■ Bracy additionally contends that the lack of in rem jurisdiction is not fatal to his motions because the court may exercise personal jurisdiction over the parties. He bases this argument on the fact that the government sought criminal forfeiture of these assets under 21 U.S.C. § 853 in the case before Judge Gibson, thus submitting to personal jurisdiction in that case. However, even though criminal and civil forfeiture proceedings are often brought in conjunction, they remain independent of each other. Consequently, the in personam criminal action does not provide personal jurisdiction in the in rem civil action. *Henderson,* 844 F.2d at 687–88. In the present cases, the government has proceeded solely on an in rem basis. Accordingly, no personal jurisdiction exists. *One Lear Jet Aircraft,* 836 F.2d at 1576 n. 5.

# 1360

## B. Setting Aside Default Judgments

Even if some way could be found to exercise jurisdiction over the present motions, Bracy has not persuaded me that he is entitled to vacate the various default judgments entered in these cases. In the Sixth Circuit, the decision whether to set aside a default judgment is within the discretion of the trial judge, although the Court of Appeals will not require a "glaring" abuse of discretion to reverse a district court's refusal to relieve a party of the harsh sanction of default. *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 397–98 (6th Cir.), *cert. denied sub nom. Garratt v. Invst Financial Group, Inc.*, — U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).

■ In exercising my discretionary review of Bracy's motions to set aside these default judgments, I must consider the following factors: 1) whether the government will be prejudiced if the judgments are set aside, 2) whether Bracy has a meritorious defense to these forfeiture actions, and 3) whether Bracy's culpable conduct led to the defaults. *Invst Financial Group*, 815 F.2d at 398; *United Coin Meter Co. v. Seaboard Coastal Line Ry.*, 705 F.2d 839, 845 (6th Cir.1983). I conclude that all of these factors militate against reopening these cases at this late date.

■ Initially, there is little doubt that the United States will suffer prejudice if the default judgments are vacated. In addition to the expense and delay that would accompany revival of three year-old cases, vacation of these judgments would require the government to attempt to replace or reconstruct the forfeited assets long since distributed in accordance with this court's orders. If the government were to attempt to recover the specific real estate, automobile, and currency involved here, it would first have to locate the original distributees, and then entangle itself in an elaborate tracing effort to find current titleholders. *See American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215, 1219 (9th Cir.1970). Assuming that the property could be found, the government would then have to deal with the ultimate distributees' seemingly legitimate claims.

Alternatively, if the government was required to replace the assets with their monetary equivalents, and Bracy ultimately obtained judgments, the government's satisfaction of those judgments might well offend sovereign immunity principles. *$57,480.05 United States Currency and Other Coins*, 722 F.2d at 1459. Moreover, Bracy cites no authority holding that forfeited assets must be impressed with a constructive trust in favor of claimants in his position, and he fails to identify a legal basis that would allow payment of any eventual judgment absent Congressional appropriation for that purpose. *See* U.S. Const. art. I, § 9, cl. 7; *Varney v. Warehime*, 147 F.2d 238, 245 (6th Cir.), *cert. denied*, 325 U.S. 882, 65 S.Ct. 1575, 89 L.Ed. 1997 (1945). Surely the government would be prejudiced by such eventualities. In sum, along with the Eighth Circuit Court of Appeals, I am aware of no principle requiring the government to undertake the significant and legally questionable effort required to "in essence, recreate a substitute res in order to permit the adjudication of an ownership claim which could and should have been placed in issue in the district court in the normal course of in rem jurisdiction." *Bank of New Orleans & Trust Co.*, 583 F.2d at 1069.

Next, Bracy's motions fail to raise "even a hint of a suggestion" of a meritorious defense to these forfeiture actions. *INVST Financial Group*, 815 F.2d at 399. Significantly, he does not revive the "legitimate business origin" defense advanced in the January 1986 motion to vacate default judgment in case G85–1157 CA1, an apparent recognition that such a defense is no longer credible. Instead, he now contends that the property was connected to "participation in prohibited activities" that were not the subject of the criminal case before Judge Gibson. He does not elaborate on the character of these "prohibited activities."

I am at a loss to understand how Bracy believes that this assertion constitutes a potential defense to these actions. Bracy

stands convicted, to use the vernacular, as a major drug dealer, if not a "drug kingpin." I can only assume, absent any contrary explanation from Bracy, that the "prohibited activities" he mentions involved his continuing criminal enterprise to distribute illegal drugs. *Cf. United States v. $83,320 in United States Currency,* 682 F.2d 573, 577 (6th Cir.1982) (forfeiture claimant's guilty plea to engaging in drug-related continuing criminal enterprise provides "sound support" for finding probable cause that subject property was furnished in exchange for drugs). The fact that the assets at issue in these cases may not have been connected to the particular transactions involved in the criminal case is immaterial. Under 21 U.S.C. § 881(a)(6), property is subject to forfeiture if it is furnished or intended to be furnished, or traceable to, an "exchange for a controlled substance." The statute is not limited to drug exchanges that form the basis of criminal proceedings.

Finally, turning to the third factor to be weighed in deciding whether to set aside these judgments, I conclude that Bracy's culpable conduct sufficiently contributed to the entry and execution of default judgments to warrant denial of the instant motions. In order for Bracy to show that his conduct was not culpable, he must offer a credible explanation for his delay in contesting these actions "that does not exhibit disregard for the judicial proceedings." *INVST Financial Group,* 815 F.2d at 399. The explanation he offers is that he thought his lawyers were protecting his interests, and he did not learn of the default judgments until May 1987.

Assuming that Bracy's lawyers were negligent in allowing the judgments to be entered and executed, this explanation does not address the question of why he waited from May 1987 to September 1988 to file the present motions. Since Bracy does not even attempt to explain the latter sixteen-month delay, I can only surmise that it resulted from his reckless disregard of these proceedings.

Moreover, Bracy neglects to state why he did not learn of the default judgments,

entered in January and July 1986, until May 1987. Although the record is not specific on this point, it appears that during at least part of this time Bracy was "on the lam" after his prison escape. I conclude that a civil litigant who fails to attend to his pending claims because he is a fugitive from justice demonstrates flagrant disregard for the processes of the court. Proceedings on a motion to vacate a default judgment are not formally equitable in character, but the discretion employed in the decision to grant or deny such a motion injects elements of equity into the equation. It is a hoary maxim of equity that someone asking for a discretionary ruling in his favor must approach the court with clean hands. In light of Bracy's escape, he fails to meet this requirement.

### C. The Sixth Amendment

■ I am satisfied that the foregoing discussion would ordinarily suffice to dispose of these motions. Bracy insists, however, that the Sixth Amendment right to counsel of his choice in the criminal case before Judge Gibson requires that the present motions be granted regardless of jurisdictional and procedural obstacles. With due regard to the principle that constitutional issues should not be unnecessarily reached and addressed, caution compels me to briefly consider Bracy's Sixth Amendment contentions.

Bracy first argues that the default judgments were obtained in violation of the Sixth Amendment because the government used these civil forfeiture proceedings as a stratagem to strip him of the ability to pay his preferred counsel in the criminal case the government planned to file. Bracy offers no proof of the government's alleged improper motive, and I am unwilling to assume that the government abused its prosecutorial discretion. *See United States v. Nichols,* 841 F.2d 1485, 1508 (10th Cir.1988). Therefore, assuming that these actions were brought in good faith and not in anticipation of a future criminal case, I see no reason why the government cannot choose to bring a civil forfeiture action when its investigation reveals what it considers to be a preponderance of evidence

showing the forfeitability of assets, and then later file criminal charges when further investigation convinces the prosecutor that she can prove such charges beyond a reasonable doubt.

Regardless of the government's motive for filing these cases, however, the entry of the default judgments could not have violated Bracy's Sixth Amendment rights. The original criminal complaint against Bracy was dismissed before the forfeiture actions were filed, and he was indicted on the matters before Judge Gibson after all final orders were entered in these cases. Thus there were no criminal proceedings pending against Bracy at any time during the life of these cases. The Sixth Amendment right to counsel is not implicated absent the initiation of adversary judicial proceedings. *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986); *United States v. Gouveia*, 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984).

Bracy's chief argument appears to be that if the entry of default judgments did not violate the Sixth Amendment, this court's present refusal to reopen those judgments will. He bases this argument principally upon *United States v. Monsanto*, 852 F.2d 1400 (2d Cir.) (en banc) (per curiam), *cert. granted*, — U.S. —, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988), which he cites for the proposition that "there is a constitutional requirement that a defendant be given access to forfeited assets in order to pay attorneys' fees."

*Monsanto* is a leaky boat in which to float this argument. First of all, *Monsanto* involved criminal, not civil forfeiture. Secondly, the view that the Sixth Amendment required the result in *Monsanto* was not shared by a majority of the twelve en banc judges. Only three judges held the view that pretrial criminal restraint of assets violates the Sixth Amendment. 852 F.2d at 1402–04 (Feinberg, C.J., concurring). Four judges disagreed. *Id.* at 1412–18, 1420 (Mahoney, J., dissenting) (Pratt, J., dissenting). Five judges did not reach the Sixth Amendment issue. *Id.* at 1404–1410, 1411–12 (Winter, J., concurring) (Miner, J.,

concurring in part and dissenting in part). Similarly, only five judges concluded that the Sixth Amendment requires a bona fide attorney's fee exemption from postconviction criminal forfeiture. *Id.* at 1402–04, 1418–19 (Feinberg, C.J., concurring) (Pierce, J., concurring in part and dissenting in part). Two judges found no such requirement. *Id.* at 1412–18, 1420 (Mahoney, J., dissenting) (Pratt, J., dissenting). Again five judges held it unnecessary to discuss the Sixth Amendment. *Id.* at 1404–1410, 1411–12 (Winter, J., concurring) (Miner, J., concurring in part and dissenting in part).

In addition, a majority of appellate decisions considering the relationship between the Sixth Amendment and the forfeiture of assets potentially available to pay a criminal defendant's chosen attorney hold that forfeiture is constitutionally permissible. *United States v. Friedman*, 849 F.2d 1488, 1489–1491 (D.C.Cir.1988) (per curiam); *United States v. Nichols*, 841 F.2d at 1509; *United States v. Jones*, 837 F.2d 1332, 1336 (Davis, J., concurring), *reh'g granted en banc*, 844 F.2d 215 (5th Cir.1988); *In re Forfeiture Hearing of Caplin & Drysdale, Chartered*, 837 F.2d 637, 643–49 (4th Cir.) (en banc), *cert. granted sub nom. Caplin & Drysdale v. United States*, — U.S. —, 109 S.Ct. 363, 102 L.Ed.2d 352 (1988) *But see United States v. Unit No. 7 and Unit No. 8*, 853 F.2d 1445, 1450–52 (8th Cir.1988). Although it has not expressly addressed the issue, I note that the Sixth Circuit in an unpublished opinion has summarily upheld a forfeiture against Sixth Amendment challenge. *United States v. One 1979 Chevrolet Corvette*, 802 F.2d 460 (6th Cir.1986). The Supreme Court will soon hear argument on the question in a joint hearing in *Monsanto* and *Caplin & Drysdale*. — U.S. —, 109 S.Ct. 363, 102 L.Ed.2d 352, 353.

Most significantly for present purposes, the judges who reached the Sixth Amendment question in *Monsanto* did not hold that the Constitution requires the payment of attorney's fees out of *forfeited* assets, as Bracy contends. Rather, they concluded that the government could not restrain *disputed* assets needed for attorney's fees

before trial, or could not pursue forfeiture of such fees after conviction under the "relation back" doctrine of 21 U.S.C. § 853(c). 852 F.2d at 1401–02. *See also Unit No. 7 and No. 8*, 853 F.2d at 1450–51. The distinction is crucial. In the case of restraint of pretrial disputed assets or the possibility of postconviction forfeiture without exemption for attorney's fees—the situation confronting the court in *Monsanto*—there is little doubt that government action impinges, constitutionally or unconstitutionally, on a defendant's ability to pay his lawyer with his own funds, or funds which may be his own.

The situation in the present case, however, is totally different. The court's refusal to reopen these cases to provide Bracy an opportunity to pay his current counsel from the forfeited assets does not in any way affect his ability to pay his lawyer with his own money. Rather, it denies Bracy the opportunity to pay his preferred counsel with *government* money. This is because the duly-entered judgments of the court transferred title to the real estate, automobile, and currency at issue in these cases to the United States under 21 U.S.C. § 881(h). It is axiomatic that the government is not required to pay for a criminal defendant's attorney of choice. *Wheat v. United States*, —— U.S. ——, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (a defendant may not insist on representation by an attorney he cannot afford); *United States v. Weisman*, 858 F.2d 389, 390–91 (8th Cir.1988) (court declines to set aside civil forfeiture on Sixth Amendment counsel of choice grounds where forfeited assets were not available to pay counsel). As the District of Columbia Circuit Court of Appeals put the matter in *Friedman*, a criminal defendant "certainly may not dip into the public coffer to retain the best counsel available." 849 F.2d at 1491 (no Sixth Amendment right of access to forfeited assets to pay preferred counsel after title to assets has vested in the government). This crucial difference between *Monsanto* and the present cases makes it highly unlikely that this decision will be affected even if the Supreme Court affirms *Monsanto* and reverses *Caplin & Drysdale.*

The purpose of the Sixth Amendment's qualified right to counsel of one's choice is to ensure that criminal defendants receive a fair trial, and in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process. *Wheat*, 108 S.Ct. at 1696–97. In the present motions, Bracy has not provided any specifics explaining how the acts or omissions of the government or this court in these cases tainted the fairness of, or undermined the adversarial process in, his criminal case before Judge Gibson. The record suggests, in fact, that Bracy's chosen attorney was by his side right through the criminal proceedings until conviction and sentence. Given these facts, and the legal principles discussed above, I hold that the Sixth Amendment does not require this court to vacate the default judgments entered in these three year-old cases.

### III. CONCLUSION

In light of the foregoing, I conclude that this court lacks jurisdiction to hear the present motions. Alternatively, I conclude that Bracy has demonstrated no constitutional or common law justification for vacating the default judgments in these cases, and I decline to set aside those judgments.

### ORDER

In accordance with the opinion filed this date,

IT IS ORDERED that Boyer Alfredo Bracy's motions to vacate default judgment, filed in cases G85–1155 CA1, G85–1156 CA1, and G85–1157 CA1, are DENIED.